UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ALBERT STEPHENS,  Plaintiff, | : : : : | No. 3:20-cv-1450 (SRU) |
| v. | : : | |
| RICARDO RUIZ, et al.,  Defendants. | : : : | |

**INITIAL REVIEW ORDER**

Albert Stephens, currently confined at Cheshire Correctional Institution in Cheshire, Connecticut, filed this complaint *pro se* under 42 U.S.C. § 1983 against four defendants: Dr. Ricardo Ruiz, APRN Deborah Broadly, APRN Jean Caplin, and Head Nurse Debra Cruz. Stephens contends that the defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. He seeks compensatory and punitive damages, as well as injunctive relief. Stephen's complaint was received on September 24, 2020, and he tendered the filing fee on November 17, 2020.

I.   Standard of Review

Under section 1915A of Title 28 of the United States Code, I must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. This requirement applies both when the plaintiff pays the filing fee and when he proceeds *in forma pauperis*. *See Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam).

Although detailed allegations are not required, a complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "[p]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

II.     Background

In September 2017, Stephens, proceeding *pro se*, filed a claim against numerous officials and medical providers associated with the Connecticut Department of Correction, alleging deliberate indifference to his serious medical needs in violation of the Eighth Amendment. *See* Compl., Doc. No. 1 ¶ 3. That case eventually settled in December 2018[1]; as part of the settlement, the parties agreed that Stephens would receive medical treatment from a vascular specialist, podiatrist and pain management specialist. *Id.* at ¶ 4.

Stephens was seen on April 9, 2019 by Dr. Jonathan E. Hasson, a vascular surgeon, and Dr. Christina G. Provenza, a general surgeon. *Id.* ¶¶ 5-6. Stephens told the surgeons that he was

---

[1] Stephens reports the date as December 2019.  His subsequent allegations, however, show that the settlement had to have been in 2018.

2

experiencing severe pain and swelling in his leg that rendered him unable to walk. *Id.* ¶ 7. After conducting an ultrasound, Drs. Hasson and Provenza diagnosed Stephens with clotting in his hip and pelvic region that could be dangerous if left untreated. *Id.* ¶ 8.

About three weeks after that appointment, Stephens was seen for follow-up by APRN Kristen Donohue-Gonzales. *Id.* ¶ 10. Donohue-Gonzales diagnosed Stephens with deep vein thrombosis in his upper leg ("DVT") and recommended that he undergo an MRI as soon as possible. *Id.* at ¶ 12. Despite that recommendation, and his repeated complaints of pain, swelling and difficulty walking, Stephens was not given an MRI. *Id.* ¶ 13.

On May 6, 2019, Stephens was seen by Dr. Nighat Hussain, a podiatrist. *Id.* at ¶¶ 14-15. Stephens described severe pain and "pins and needles" in his left foot. *Id.* at ¶ 15. Without examining Stephens, Dr. Hussain determined that no follow-up was needed and indicated that she did not treat the conditions that Stephen was experiencing. *Id.* at ¶¶ 16-17. Stephens subsequently met with APRN Deborah Broadly and requested an appointment with Dr. Ruiz. APRN Broadly denied the request and referred him instead to APRN Jean Caplin. *Id.* ¶¶ 21-22.

Stephens was seen by APRN Caplin in September 2019; by that point, his leg had become so painful that he was unable to walk for more than ten minutes at a time. *Id.* ¶ 23. Stephens told APRN Caplin that he had a clot in his upper leg and asked when he could be given an MRI. *Id.* ¶ 24. APRN Caplin did not or order an MRI or arrange for Stephens to see Dr. Ruiz. *Id.* ¶ 25. Instead, she told Stephens she would call the doctor when his pain reached a "25." *Id.* ¶ 26.

Stephens then submitted several requests to Dr. Ruiz about his condition and filed grievances about Dr. Ruiz. *Id.* ¶ 27. He received no reply, and was subsequently told by Nurse

3

Debra Cruz that he should stop filing complaints, and that he would not be put on the "list" to see a doctor. *Id.* at ¶ 28.

In September 2019, Stephens wrote to Assistant Attorney General DeAnn S. Varunes (who had negotiated the 2018 settlement on behalf of the defendants), reporting that the defendants were not adhering to the settlement agreement. *Id.* at ¶ 29. In December 2019, Stephens was taken to see a pain specialist in Meriden, Connecticut. *Id.* ¶ 30. Stephens described extreme pain in his leg and foot that prevented him from walking correctly. *Id.* ¶ 31. The specialist told Stephens that without reviewing an MRI of Stephens' leg, he would not be able provide treatment. *Id.* ¶ 32.

Stephens then informed Dr. Ruiz and APRNs Caplin and Broadly that both the vascular surgeon and pain specialist had ordered an MRI in order to treat him for blood clots. *Id.* ¶ 33. However, Stephens was not given an MRI, and was later informed by Nurse Cruz that his request for an MRI had been denied. *Id.* ¶ 41. Dr. Ruiz subsequently told Stephens that he did not believe an MRI was necessary. *Id.* ¶ 42.

Stephens alleges that in addition to denying him an MRI despite awareness of his blood clots and the potential risk of stroke they posed, Dr. Ruiz, APRN Broadly and APRN Caplin have provided no treatment or medication to address his pain or monitored his condition to mitigate the risk of stroke. *Id.* ¶¶ 36, 43-44, 51. They have instead told him that he would be treated only in the event he actually suffers a stroke. *Id.* at ¶ 50.

III.   Discussion

  A.  Section 1983

Section 1983 provides a cause of action "for damages against any person who, acting

4

under color of state law, deprives another of a right, privilege or immunity secured by the Constitution or the laws of the United States." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999). Although the Eleventh Amendment bars section 1983 claims against state officials in their official capacities, there is a limited exception for suits seeking prospective injunctive relief for violations of constitutional rights or federal law. *Ex Parte Young*, 209 U.S. 123 (1908); *see also Edelman v. Jordan*, 415 U.S. 651, 677 (1974). State officials may additionally be sued in an individual capacity even if "the acts complained of were taken in the course of their official duties." See *Ruggiero v. Fischer*, 2017 U.S. Dist. LEXIS 138240, at *9 (W.D.N.Y. Aug. 25, 2017); *see also Hafer v. Melo*, 502 U.S. 21, 30-31 (1991).

Stephens does not specify whether he asserts his section 1983 claims against the defendants in their individual or official capacities. However, because he seeks both money damages and prospective injunctive relief, I construe the complaint to assert claims against the defendants in both their individual and official capacities. *See, e.g., Perry v. Wright*, 2013 U.S. Dist. LEXIS 36250, at *8 (S.D.N.Y. Mar. 8, 2013) ("[i]n liberally construing the Complaint, the Court assumes that Plaintiff intended to sue the Defendants in both their official capacity… as well as their individual capacity").

B. Eighth Amendment Claim

Stephens contends that by failing to prescribe an MRI or otherwise treat the blood clots in his leg and upper pelvic area, the defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.

The Eighth Amendment's ban on the "unnecessary and wanton infliction of pain," has been interpreted to include the "deliberate indifference to serious medical needs of prisoners."

5

*Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Id.* at 104-05.

To plausibly allege deliberate indifference for failure to provide medical treatment, an incarcerated individual must establish both that the medical need in question was objectively serious, and that the defendants acted with a sufficiently culpable mental state. *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "The objective medical need element measures the severity of the alleged deprivation, while the subjective deliberate indifference element ensures that the defendant prison official acted with a sufficiently culpable state of mind." *Id.* at 183-84 (internal quotations omitted).

    i.   *Serious Medical Need*

Courts in this Circuit have considered a variety of factors to determine whether a medical need is objectively serious, including whether the condition is one "of urgency, one that may produce death, degeneration, or extreme pain." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)). The extent to which the condition "affects an individual's daily activities" is also relevant. *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). Finally, a condition that could "result in…the unnecessary and wanton infliction of pain" absent treatment may also constitute a sufficiently serious condition. *Harrison v. Barkley*, 219 F.3d 132, 136–37 (2d Cir. 2000).

Under some circumstances, blood clots may constitute a sufficiently serious condition for

6

purposes of the Eighth Amendment. Courts reviewing claims based on denial of access to treatment for clots have considered the severity of the clotting, the risk of stroke if left untreated and the extent to which the clots cause symptoms interfering with daily life. *See Petitt v. Badura,* 2020 U.S. Dist. LEXIS 185896, at *11 (D. Conn. Oct. 7, 2020) (finding serious medical need existed where defendant was denied dose of medication to prevent clotting and blood clot developed that "could move and in fact cause death"); *El-Hanafi v. United States*, 2015 U.S. Dist. LEXIS 1266, at *45 (S.D.N.Y. Jan. 6, 2015) ("[defendant]…adequately alleged that his condition at the time was objectively serious—the veins in his leg had become dark grey and almost black, walking had become very painful for him (he had to walk on his toes) he suffered from blood clots and swelling"); *Pinkard v. Crowley*, 2018 U.S. Dist. LEXIS 216236, at *8 (W.D.N.Y. Dec. 26, 2018) ("the Court finds that [the complaint] plausibly alleges the denial of medical care for two sufficiently serious medical conditions, his diabetes and his propensity to develop blood clots"); *Heron v. Gessner*, 1999 U.S. Dist. LEXIS 19212, at *23 (S.D.N.Y. Nov. 30, 1999) (diagnosis of deep vein thrombosis coupled with evidence that such a clot could cause death constituted serious medical need ).

     Here, Stephens indicates he has been diagnosed with blood clots in his pelvic area by Drs. Hassan and Provenza, and that APRN Donohue-Gonzalez specifically diagnosed him with deep vein thrombosis (DVT). *See* Compl., Doc. No. 1 at ¶¶ 7-10. He describes the pain as "extreme," and states that as a result of both the pain and swelling, he is unable to walk. *Id.* at ¶ 7. Finally, Stephens states that, if left untreated, the clots in his leg may be potentially life threatening. *Id.* For purposes of initial review, allegations that his condition caused him extreme pain, prevented him from being able to walk, and could result in stroke establish a sufficiently

7

serious medical need.

### ii. *Deliberate Indifference*

To establish that prison officials acted with deliberate indifference, a plaintiff must allege that the official acted or failed to act while "actually aware of a substantial risk that serious inmate harm" could result. *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006). Awareness "may be proven from the very fact that the risk was obvious." *Spavone v. New York State Dep't of Corr. Servs*, 719 F.3d at 138 (quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)). The test is a subjective one; accordingly, "failure to alleviate a significant risk that [the official] should have perceived but did not" does not constitute deliberate indifference. *Farmer*, 511 U.S. at 838; *see also Salahuddin*, 467 F. 3d 263 at 281 ("[t]he charged official must be subjectively aware that his conduct creates such a risk"). Additionally, "[i]ssues of medical judgment cannot be the basis of a deliberate indifference claim." *Hill*, 657 F.3d 116 at 123; *see also Salahuddin*, 467 F.3d 263 at 282 (2d Cir. 2006) ("unsound conclusion" regarding urgency of test and progression of illness did not constitute deliberate indifference where defendant was "not aware of a substantial risk" posed by postponing test).

Here, Stephens alleges that Dr. Ruiz, APRN Broadly and APRN Caplin were aware that he had been diagnosed with clots and deep vein thrombosis, that he was experiencing debilitating pain and at risk of stroke, and that both the vascular surgeon and pain specialist had indicated that an MRI was necessary in order to provide treatment. *See* Compl., Doc. No. 1 at ¶¶ 11, 33-34; Section E ¶ 2-4. However, APRNs Broadly and Caplin refused to schedule an MRI; Dr. Ruiz first refused to order an MRI and later told Stephens that he did not agree that an MRI was medically necessary. *Id.* at ¶ 42.

8

Viewing the allegations in the light most favorable to Stephens, the claim that APRNs Caplin and Broadly were aware that an MRI had been deemed medically necessary and failed to follow up on Stephens' request so that he could be afforded treatment for a painful and potentially dangerous condition satisfies the standard for deliberate indifference. Accordingly, I permit the claim of deliberate indifference for failure to order an MRI to proceed against APRNs Caplin and Broadly. *See, e.g., Lloyd v. Lee,* 570 F. Supp. 2d 556, 569 (S.D.N.Y. 2008) ("reasonable jury could infer deliberate indifference from the failure of the doctors to take further steps to see that [plaintiff] was given an MRI" where one had been prescribed and defendant indicated he was "experiencing extreme pain and loss of mobility").

With regard to Dr. Ruiz, mere disagreement over the proper course of treatment, without more, is insufficient to establish deliberate indifference to medical needs. "The question whether an X-ray—or additional diagnostic techniques or forms of treatment—is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment." *Estelle*, 429 U.S. 97 at 107;  *see also Sonds v. St. Barnabas Hosp. Corr. Health Servs.,* 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001) ("disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a Section 1983 claim"). However, "in certain instances, a physician may be deliberately indifferent if he or she consciously chooses an easier and less efficacious treatment plan." *Chance*, 143 F. 3d 698 at 703. Stephens has alleged that Dr. Ruiz was aware that the vascular surgeon and pain specialist had indicated that an MRI was medically necessary for treatment of the clots but still refused to order one. *See* Compl., Doc. No. 1 at ¶ 42. Because the basis of that

9

refusal is unclear, I permit the claim against Dr. Ruiz to proceed for purposes of initial review.

Stephens additionally contends that APRNs Caplin and Broadly and Dr. Ruiz failed to treat his condition with either pain medication or vascular stents. *Id.* at ¶43-44. He was told that he would receive treatment for the condition only in the event of an actual stroke; however, his blood levels were not monitored to determine whether he was at risk for stroke. *Id.* at ¶ 50. I note that it is not entirely clear from the complaint whether Stephens continued to receive treatment from the vascular surgeon or pain specialist during the time he alleges denial of treatment by Dr. Ruiz and APRNs Caplin and Broadly, which may ultimately bear on the analysis regarding deliberate indifference. *See id.* at ¶ 39 ("Caplin, Broadly and Ruiz are aware that inmate had been going to UConn"). However, for purposes of initial review, allegations that the defendants failed to provide treatment and informed him that treatment would only be available if he suffered a stroke are sufficient to establish that Dr. Ruiz and APRNs Caplin and Broadly knew of and disregarded a substantial risk of serious harm. *See, Farmer*, 511 U.S. 825 at 837-838. Accordingly, I permit the claim of deliberate indifference for failure to provide treatment to proceed against Dr. Ruiz, APRN Caplin and APRN Broadly. To the extent that Stephens seeks damages, however, the Eighth Amendment claims may proceed only against the defendants in their individual capacities; to the extent that Stephens seeks damages from the defendants in their official capacities, those claims are dismissed with prejudice. *Hafer*, 502 U.S. 21 at 30-31.

With respect to Cruz, Stephens alleges only that she told him to stop submitting medical requests, refused to place him on the list to see a doctor and informed him he would not be scheduled for an MRI. *See* Compl., Doc. No. 1 at ¶ 28, 41. Because Stephens does not allege that she was aware of his underlying medical conditions, that allegation is insufficient to evince a

10

"conscious disregard of a substantial risk of serious harm." *Hathaway*, 99 F.3d 550 at 553. Accordingly, the claim against Cruz is dismissed for failure to state a claim upon which relief may be granted. 28 U.S.C. § 1915A(b)(1).

### CONCLUSION

The claim against defendant Cruz is **DISMISSED** without prejudice under 28 U.S.C. § 1915A(b)(1). The claims for money damages against all defendants in their official capacities are dismissed with prejudice. The case will proceed on the deliberate indifference to serious medical needs claim in violation of the Eighth Amendment against Dr. Ruiz, APRN Broadly, and APRN Caplin for refusal to order an MRI or provide treatment for Stephens' condition.

The court enters the following additional orders.

(1) Because Stephens paid the filing fee to commence this action, he is directed to effect service of the Complaint and this Order on defendants Ruiz, Broadly, and Caplin in accordance with Federal Rule of Civil Procedure 4 and file a return of service within **ninety (90) days** of the date of this order.

(2) T**he Clerk shall** send Stephens a copy of this Order.

(3) **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(4) The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include all additional defenses permitted by the Federal Rules.

(5) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be

completed within **seven months (210 days)** from the date of this order. Discovery requests need not be filed with the court.

(6) All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(7) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8) If Stephens changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. Stephens must give notice of a new address even if he is incarcerated. Stephens should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Stephens has more than one pending case, he should indicate all the case numbers in the notification of change of address. Stephens should also notify the defendants or the attorney for the defendants of his new address.

(9) Stephens shall utilize the Prisoner Efiling Program when filing documents with the court.  Stephens is advised that the Program may be used only to file documents with the court. As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on defendants' counsel by regular mail.

(10) The Clerk shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy to Stephens.

So ordered.

Dated at Bridgeport, Connecticut, this 3rd day of February 2021.

/s/ STEFAN R. UNDERHILL<br>
Stefan R. Underhill<br>
United States District Judge